UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ALEJANDRO ALIX MANZO,

    Petitioner,

vs.

BRIAN WILLIAMS, et al.,

    Respondents.

Case No. 2:10-cv-01668-APG-PAL

**ORDER**

Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#4) and respondents' answer (#15). The court finds that petitioner is not entitled to relief, and the court denies the petition.

After a joint jury trial with his co-defendant Armando Ramirez, Jr., petitioner was convicted in state district court of conspiracy to commit murder and first-degree murder with the use of a deadly weapon. Ex. 56 (#9-61). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 60 (#9-65). Petitioner then filed in the state district court a post-conviction habeas corpus petition. Ex. 62 (#9-67). Pursuant to Nev. Rev. Stat. § 34.810, the state district court dismissed all claims other than the claims of ineffective assistance of counsel because petitioner could have raised those claims on direct appeal. The state district court denied on the merits petitioner's claims of ineffective assistance of counsel. Ex. 65 (#9-70). Petitioner appealed, and the Nevada Supreme Court affirmed for the same reasons. Ex. 70 (#9-75).

Petitioner then commenced this action. The court dismissed as procedurally defaulted the parts of ground 2 that had been barred in state court pursuant to § 34.810. Order (#14).

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

Ground 1 has two separate claims. Ground 1(1) is a claim that the evidence was insufficient to support the jury's verdicts. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. "[I]t is the exclusive province of the jury, to decide what facts are proved by competent evidence. It was also their province to judge of the credibility of the witnesses, and the weight of their testimony, as tending, in a greater or less degree, to prove the facts relied on." Ewing's Lessee v. Burnet, 36 U.S. (11 Pet.) 41, 50-51 (1837).

On this issue, the Nevada Supreme Court held:

> First, Manzo claims that there was insufficient evidence to support his convictions for conspiracy to commit murder and first-degree murder with the use of a deadly weapon. In particular, he argues that the testimony of Brandi Robinson-Monge was unreliable because she was a convicted felon and admitted drug user and that some of her testimony was contradictory. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact.
>
> In particular, evidence presented at trial showed that on July 14, 2003, Robinson-Monge and her brother, Robert Monge, traveled with Manzo and Armando Ramirez, Jr., to the Eureka Casino in Las Vegas to meet the victim, Miguel Ortega. Testimony at trial indicated that Robinson-Monge offered the use of her home to go "get high," but Ramirez declined in favor of going to Ortega's residence. Ortega left on a bicycle and the other four got in a truck. On the way to Ortega's apartment, Ramirez instructed his companions to conceal his identity while there. The evidence also showed that prior to arriving at Ortega's apartment Ramirez was angry with Ortega, threatened to run Ortega over, and asked his companions, "Do you got my back?"
>
> Robinson-Monge testified that just prior to entering Ortega's apartment, she saw Manzo either fixing or loading a gun. At some point, Ortega and Ramirez began arguing with each other about some guns that belonged to Ramirez. After the situation appeared to calm down, Ramirez, Manzo, and Ortega walked outside. A few seconds later, Ramirez and Ortega were seen wrestling with each other, and then two sets of gunshots were heard. Robinson-Monge testified that she did not see who fired the first set of shots, but she saw Manzo firing the second set of shots in the victim's direction. No witnesses saw Ortega with a gun at any time.

> A maintenance man who was working on an air conditioning unit on the roof of a nearby building testified that he saw a Hispanic male fire three to four shots at the victim as the victim appeared to be begging for his life. He also stated that he saw the shooter get into the driver's side of a white truck along with a woman and another man and drive off.
>
> Robinson-Monge testified that immediately after the shooting, she and Monge got in the back seat of a white Ford pickup truck driven by Ramirez. They drove a few yards and then Manzo got in the front passenger seat.
>
> Ortega died from multiple gunshot wounds. Forensic analysis of the bullets and shells recovered from the scene and Ortega's body indicated that at least two different guns were used in the shooting.
>
> The jury could reasonably infer from this evidence that Manzo was guilty of conspiracy to commit murder and first-degree murder. It is for the jury to determine the weight of the evidence and the credibility of the witnesses, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict.

Ex. 60, at 1-3 (#9-65) (footnotes omitted). The Nevada Supreme Court identified the correct governing principles of petitioner's claim. It also noted correctly that the jury ultimately decides whether to believe a witness. The testimony of Robinson-Monge was not disqualified automatically simply because she was a convicted felon and a drug user. In this case, other evidence corroborated her testimony. She testified that she heard two sets of shots, that she did not see who fired the first set but that she saw petitioner fire the second set. The testimony of another witness showed that there were two different calibers of bullets removed from Ortega's body, from which the jury could infer that two guns were used and likely that there were two shooters. See Ex. 50, at 62-63 (#9-54). The testimony of James Ross, the maintenance man, also corroborated Robinson-Monge's testimony.[1] Under these circumstances, the Nevada Supreme Court reasonably applied Jackson. Ground 1(1) is without merit.

Ground 1(2) concerns some statements from a conversation between the co-defendant Ramirez and Robinson-Monge a few days after the shooting. On direct examination, Robinson-Monge testified, "[H]e said that he felt like he was a man and that he wasn't like somebody else." Ex. 49, at 165 (#9-53). Then, on cross-examination, Robinson-Monge denied her earlier testimony

---

[1] By the time of the trial, Ross lived in Florida. The parties agreed that they would take his deposition in Florida and then play the video recording of the deposition to the jury. The recording was not transcribed. See Ex. 50, at 14 (#9-54). This court is relying upon the Nevada Supreme Court's summary of Ross' testimony, and petitioner has not argued that that summary was incorrect.

and testified, "I said that he said he didn't feel like a man. . . . That he had never done anything like this before and he would never hurt me." Id., at 195-96 (#9-53).

On this issue, the Nevada Supreme Court held:

> Manzo argues that his joint trial with Ramirez was improper because it created a Bruton problem. In particular, he claims that Robinson-Monge's testimony about statements that Ramirez made to her implicated Manzo and therefore violated his Sixth Amendment right to confront the witnesses against him. Specifically, Robinson-Monge testified that two days after the shooting Ramirez came to her apartment and told her that "I never killed anybody before." She further testified that at one point "[Ramirez] was like emotional, and he said that he felt like he was a man and that he wasn't like somebody else." Later, Ramirez's counsel inquired as to whom Ramirez was referring. The State objected, and after a short side-bar, the district court sustained the objection. Despite the district court's ruling, Ramirez's counsel again commented on Ramirez's vague statement to Robinson-Monge during closing argument. Manzo's counsel objected, and a bench conference was held. No further reference was made to the testimony.
>
> In Bruton v. United States, the United States Supreme Court determined that the Confrontation Clause of the Sixth Amendment was violated when a non-testifying defendant's confession, implicating his codefendant, was admitted at their joint trial. In Richardson v. Marsh, the Supreme Court distinguished Bruton and held that the Sixth Amendment was not violated when a codefendant's admitted confession did not expressly implicate the defendant and was not incriminating on its face. In Gray v. Maryland, the Supreme Court further clarified the distinction between Richardson and Bruton, explaining that while the simple redaction of a defendant's name in a codefendant's confession is similar enough to an unredacted confession that it warrants the same legal result, a confession that is only incriminating "'when linked with evidence introduced later at trial'" falls outside the scope of Bruton.
>
> Here, Ramirez did not expressly implicate Manzo in his comments to Robinson-Monge, and she was not permitted to testify as to whom she thought Ramirez was referring. Although the jury may have inferred from other evidence that Ramirez was referring to Manzo, the fact that such implication was the result of other "linking" evidence places Robinson-Monge's testimony outside the class of statements to which Bruton's protections apply. Without the evidence that Manzo was seen shooting at the victim and evidence indicating that Ramirez and Manzo conspired to murder him, the statement cannot be said on its face to implicate Manzo. Accordingly, we conclude that the challenged testimony did not violate Manzo's Sixth Amendment right to confront the witnesses against him.

Ex. 60, at 4-6 (#9-65) (footnotes omitted) (citing Gray v. Maryland, 523 U.S. 185 (1998), Richardson v. Marsh, 481 U.S. 200 (1987), and Bruton v. United States, 391 U.S. 123 (1968). In an omitted footnote, the Nevada Supreme Court recognized that Robinson-Monge's testimony had changed, as noted above. The Nevada Supreme Court identified the correct governing principles of federal law. Petitioner has not explained how Ramirez's statement, "I never killed anybody before," implicated petitioner, and the court can see no implication. Ramirez's statement that "he

wasn't like somebody else" did not directly implicate petitioner. Ramirez's statement was nothing like the statement that the Court found objectionable in Gray. The statement in Gray was:

"Question: Who was in the group that beat Stacey?

"Answer: Me, deleted, deleted, and a few other guys."

523 U.S. at 196. The "deleteds" in that statement could only have referred to other co-defendants. In petitioner's case, if Ramirez was referring to people present at the shooting, then he might have been referring to petitioner, whom Robinson-Monge saw firing shots, to Ortega, who, in Ramirez's opinion was showing disrespect to Ramirez, or even to Robert Monge, who by all accounts was not fully aware of the events at the time. Only by considering other evidence presented to the jury could the jury infer that Ramirez was referring to petitioner.[2] The Nevada Supreme Court reasonably applied Bruton and subsequent cases. Ground 1(2) is without merit.

The surviving part of ground 2 contains four claims of ineffective assistance of trial counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so

---

[2] After Robinson-Monge's testimony, and after the jury left, Ramirez's counsel made it clear that he was trying to implicate and shift blame onto petitioner. Ex. 49, at 234-36 (#9-53). The jury heard none of that.

exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

In ground 2(1), petitioner claims that trial counsel failed to obtain expert witnesses in pathology, firearms, ballistics, and crime-scene analysis. On this issue, the Nevada Supreme Court held:

> First, appellant claimed that his trial counsel was ineffective for failing to obtain expert witnesses in pathology, firearms, ballistics, and crime scene analysis. Appellant failed to demonstrate that he was prejudiced. The State presented witnesses that testified extensively in these areas. Appellant failed to identify any experts that would have testified in a different manner. Accordingly, he failed to demonstrate that there was a reasonable probability of a different outcome at trial had his trial counsel sought additional expert witness testimony. Therefore, the district court did not err in denying this claim.

Ex. 70, at 2 (#9-75). The court agrees with respondents. Petitioner has not alleged what tests the experts would have conducted or how the experts would have testified differently than the prosecution's experts, and thus he has not explained how the experts could have changed the outcome of the trial. The Nevada Supreme Court applied Strickland reasonably. Ground 2(1) is without merit.

In ground 2(2), petitioner claims that trial counsel failed to seek a pre-trial dismissal of the case because the prosecution had misplaced the victim's clothes. On this issue, the Nevada Supreme Court held:

> Second, appellant claimed that his trial counsel was ineffective for failing to seek a pretrial dismissal of the charges because the State misplaced the victim's clothes. Appellant failed to demonstrate prejudice. Appellant failed to demonstrate that sanction were warranted for the failure to gather this evidence because he failed to demonstrate a reasonable probability that the outcome of the trial would have been different had the victim's clothes been available to the defense. Randolph v. State, 117 Nev. 970, 987, 36 P.3d 424, 435 (2001). Therefore, the district court did not err in denying this claim.

Ex. 70, at 2 (#9-75). Again, the court agrees with respondents. Nowhere in the petition does petitioner explain why the victim's clothes were important. Having read the transcript, the court can see no reason on its own. The Nevada Supreme Court applied Strickland reasonably. Ground 2(2) is without merit.

In ground 2(3), petitioner claims that trial counsel failed to argue that there was insufficient evidence to convict him and failed to argue that a joint trial with Ramirez violated Bruton. On this issue, the Nevada Supreme Court held:

> Third, appellant claimed that his trial counsel was ineffective for failing to argue that there was insufficient evidence to convict him and for failing to argue that trying him along with a codefendant violated Bruton v. United States, 391 U.S. 123 (1968). Appellant cannot demonstrate that he was prejudiced because the underlying claims were raised on direct appeal and this court rejected those claims. Manzo v. State, Docket No. 49002 (Order of Affirmance, October 17, 2008). Therefore, the district court did not err in denying those claims.

-8-

Ex. 70, at 2 (#9-75). This court has considered the Nevada Supreme Court's decision on both claims and found that they were reasonable applications of clearly established federal law. Petitioner has not shown how the outcome of the proceedings could have been different had counsel raised these issues in the trial court instead of direct appeal. For that reason, the Nevada Supreme Court applied Strickland reasonably.

Ground 2(4) is a claim of cumulative error based upon the three preceding claims of ineffective assistance of counsel. On this issue, the Nevada Supreme Court held:

> Fourth, appellant claimed that the above errors amounted to cumulative error. Because appellant failed to demonstrate that he was prejudiced by any of the above claims, he failed to demonstrate that the cumulative effect amounted to ineffective assistance of counsel. Therefore, the district court did not err in denying this claim.

Ex. 70, at 3 (#9-75). Because the Nevada Supreme Court's holdings on the three preceding claims of ineffective assistance of counsel were reasonable applications of Strickland, its holding on this cumulative-error claim also was reasonable. Ground 2(4) is without merit.

To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a certificate of appealability, after making a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Petitioner did not challenge the procedural default of parts of ground 2, and reasonable jurists would not find the court's conclusion on that matter to be debatable or wrong. Having reviewed its determinations on the remaining grounds, the court concludes that reasonable jurists would not find any of those determinations to be debatable or wrong. The court will not issue a certificate of appealability.

1    In reviewing the record, the court has found that exhibit 52, which is the transcript of the last
2 day of the jury trial and which contains the arguments of counsel, is missing. Respondents should
3 correct that omission to make the record complete.
4    IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#4) is
5 **DENIED**. The clerk of the court shall enter judgment accordingly.
6    IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.
7    IT IS FURTHER ORDERED that respondents shall file exhibit 52 within fourteen (14) days
8 from the date of entry of this order.
9    DATED:   September 16, 2013.

                                                    _____
                                                    ANDREW P. GORDON
                                                    United States District Judge